## CITY OF DALLAS v. F. W. AND M. H. MILLER.

### No. 373.

**Municipal Corporation—Powers—Condemnation—Trespass—Constitutional Law.**—Appellees occupied as a homestead a lot which jutted out into the street about five feet further than adjoining property. The chief of police of appellant, acting in pursuance of an ordinance, and under the instructions of the mayor, forcibly removed the front fence of appellees, set it back, converted the space of five feet into a sidewalk for the use of the public, and reported his action to the city council, which acquiesced therein. In an action by appellees for damages, *Held:*

1. Appellant was a trespasser, and being such, was responsible for the damage done to appellees by reason of the wrongful taking of the strip of land.

2. Allowing one of appellees to testify that he owned the land, and admitting in evidence a deed to the other, without proof of the genuineness of the signatures thereto, if error, was not injurious to appellant, since there was evidence upon the issue, besides such testimony, to warrant a recovery by appellees. Proof of actual and exclusive possession of the land by appellees gave them the prima facie right to recover for the damage done, and appellant could escape liability only by showing that another owned the land.

3. Appellant had the right under its charter to remove the obstruction by legal condemnation proceedings. Not adopting this method, but proceeding in an illegal manner to appropriate private property to public use, appellant became liable for damages for the injuries done.

4. The action of the city council manifested an intention to appropriate the property to public use, and the same was done in disregard of the constitutional inhibition against the taking or damaging of private property for the use of the public, without first rendering compensation therefor.

5. The obligation of appellant arises not by contract, but by tort, and does not fall within the purview of article 11, sections 5 and 7, of the Constitution, which requires a city council, at the time of creating a debt against the city, to provide for the levying and collecting of a tax to pay interest, and to provide a sinking fund.

6. Appellees having elected to sue for damages instead of the land, the judgment awarding damages and vesting title in the city will not be disturbed, as appellees are not complaining thereat, although the court should have decreed to appellant an easement over the land instead of title thereto.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*A. P. Wozencraft* and *M. Trice,* for appellant.—1. If the land had been condemned by appellant for its use as a public street, the title would not have been divested out of appellees and vested in appellant. Appellant would only have obtained an easement; the title would have remained in appellees. Rev. Stats., art. 1335; Cooper v. Connerty et al., 83 Texas, 133; O'Leary v. Durant, 70 Texas, 409; Hall v. Jackson, 3 Texas, 305; Mann v. Falson, 25 Texas, 276; Pinchain v. Collard, 13 Texas, 333; Gammage v. Alexander, 14 Texas, 414; Norvell v. Phillips, 46 Texas, 162; Wallace v. Bogel, 62 Texas, 636; Dunlap v. Southerlin, 63 Texas, 38.

2. No debt for any purpose can be incurred in any manner by any city unless provision is made at the time of creating the same for levying and collecting a tax to pay the interest and provide a sinking fund.

The use of the word debt in the Constitution shows an evident intention to include all obligations to pay money for permanent benefits and improvements. Const., art. 11, secs. 5, 7; Barber v. East Dallas, 83 Texas, 147; City of Terrell v. Dessaint, 71 Texas, 770.

*Y. B. Dowell* and *G. G. Wright,* for appellees.—1. Whether the appellant sought to condemn the land or not, it took and appropriated it to public use and converted it into a sidewalk, therefore should pay for it.

2. For property taken for public use there is a remuneration guaranteed therefor under the Constitution to aggrieved parties.

3. Land may be taken for public use by condemnation proceedings under the statute, though if the corporation does not see fit to adopt that course, and forcibly takes possession of land and appropriates it to public use, the parties being damaged thereby can certainly either sue for the land or damages.

4. A railroad company is liable for property taken for public use, and a municipal corporation occupies the same position as a railroad corporation. Const. 1886, art. 1, sec. 17; Rev. Stats., art. 342; Railway v. Farris, 26 Texas, 588–603; Railway v. Merkel, 32 Texas, 725; Railway v. Benitos, 59 Texas, 326; Hays v. Railway, 62 Texas, 398–400; Railway v. Pfeuffer, 56 Texas, 66; Railway v. Jarrell, 60 Texas, 268; Railway v. Poindexter, 70 Texas, 105; City of East Dallas v. Barksdale, 83 Texas, 117; Ewing v. St. Louis, 5 Wall., 413; 18 U. S., 657.

RAINEY, ASSOCIATE JUSTICE.—*Conclusions of Fact.*—The city of Dallas, appellant, is a municipal corporation, duly incorporated under a special act of the Legislature of the State of Texas. On April 23, 1890, acting within the scope of its authority, its council passed the following ordinance:

"A resolution, directing and requiring the chief of police to abate and remove obstructions and nuisances, and encroachments in, upon, along, or across sidewalks, streets, alleys, avenues, and highways of the city.

"Be it resolved by the city council of the city of Dallas, that the chief of police be, and is hereby authorized, empowered, and directed, and it is hereby made his duty to proceed without delay to abate any and all fences, houses, buildings, and other structures, obstructions, and encroachments whatsoever now or heretofore erected or established, or which may at any time hereafter be erected or established

by any person or persons whomsoever, without the authority of the said council, in, upon, along, or across any of the sidewalks, streets, avenues, alleys, or highways within the city of Dallas; and for that purpose he shall have power, and it is hereby made his duty, to use and employ all necessary force or assistance.

" Be it further resolved, that it is hereby made the duty of the chief of police, and other police officers of the city of Dallas, to see that any and all ordinances of the city prohibiting the obstruction of the sidewalks, streets, alleys, and highways thereof be strictly enforced, and to report any and all violations hereafter committed of such ordinance or ordinances by any person or persons, whether by hereafter erecting any such obstruction, or by maintaining any such obstructions heretofore erected.

"Be it further resolved, that it is hereby made the duty of the mayor to enforce the provisions of this resolution, and whenever it shall come to his knowledge that any sidewalk, street, avenue, alley, or highway within the city of Dallas is obstructed or encroached upon, as aforesaid, he shall direct the chief of police to remove or abate said obstructions or encroachments without delay; and said chief of police shall thereupon proceed so to abate and remove the same.

"Be it further resolved, that whenever the chief of police shall abate or remove any obstruction or encroachment, as aforesaid, under the provisions of this resolution, such abatement or removal shall be made at the cost of the party who shall have erected, established, or maintained said obstruction or encroachment; that the chief of police shall keep an exact account of such cost and expense, and deliver the same to the city attorney, whose duty it shall be to proceed to collect the same by suit or otherwise."

And the chief of police made the following report, dated May 7, 1890, and the following action was taken upon it by said council:

" *Honorable Mayor and City Council:*

"GENTLEMEN: In accordance with a resolution passed by your honorable body, and acting under the instructions of the mayor, I have moved the fence of Mr. Miller, on Bryan street, and house on Holland, and fence on Snodgrass street, belonging to Dr. Hughes. The cost of moving the house is $15, which I ask your honorable body to pay.
"Respectfully submitted,
"J. C. ARNOLD, Chief of Police."

"Alderman Gannon moved that said account be allowed, and the city secretary instructed to draw warrant for $15. Carried."

The property in question was owned by plaintiffs and occupied by them as a homestead at the time of the trespass, and had been so owned and occupied for several years prior thereto. The property jutted out

into the street about five feet further than adjoining property, and the lot was seventy-five feet and eight inches wide.

During the year 1890 the chief of police of Dallas, acting in pursuance of said ordinance, and under the instructions of the mayor, forci· bly removed the front fence of plaintiffs and set it back so that the line of the sidewalk in front of plaintiffs' property would be the same as that of the sidewalks on that side of the street on each side of plaintiffs' property. The strip thus appropriated has been used as a sidewalk ever since. The evidence was conflicting as to the amount of damage, but there was sufficient evidence to warrant the court in finding the sum of $513.20.

*Conclusions of Law.*—Appellant's first and second assignments of error complain of the action of the court in permitting the introduction of certain testimony over objections: First, in allowing M. H. Miller, one of the plaintiffs, to testify that he was the owner of the land in controversy; second, in allowing a deed to the property to Fannie W. Miller, one of the plaintiffs, to be introduced in evidence, without proving the genuineness of the signatures to said deed.

The evidence shows that appellant's chief of police, acting under said ordinance and under instructions of its mayor, wrongfully and forcibly took possession of plaintiffs' property and appropriated it to the use of the public for a sidewalk. The evidence further shows, that plaintiffs were in actual and exclusive possession of the property, and had been for years prior thereto, of which appellant's officers were cognizant.

Appellant was a trespasser, and being such, it was responsible for the damage done to plaintiffs by reason of the wrongful taking of the strip of land. Under such circumstances, the proof of actual and exclusive possession of the land by plaintiffs gives them the prima facie right to recover for the damage done; and the only way for appellant to escape liability to plaintiffs for the value of the land taken, would be to show that some person other than plaintiffs owned the land. If this was shown, plaintiffs could only recover the damage done to their possession, but could not recover the value of the land appropriated. Appellant made no effort to show title in a third party. There was sufficient testimony on the point at issue, besides the testimony complained of, to warrant a recovery by appellees, and the admission of said testimony, if error, was not injurious to appellant. Therefore, we conclude the first and second assignments of error were not well taken. Railway v. Cullers, 81 Texas, 382, and cases cited; City of East Dallas v. Barksdale, 83 Texas, 117.

Appellant insists that the action of the chief of police was without authority, and the city was not bound thereby; because the land had

not been taken possession of or used by the city for a sidewalk, or for any other purpose.

This contention, in our opinion, is not supported by the facts in this case. The ordinance of the city council directed its chief of police to "abate any and all fences, houses, buildings, and other structures, obstructions, and encroachments whatsoever, now or heretofore erected or established * * * in, upon, along, or across any of the sidewalks, streets, avenues, alleys, or highways within the city of Dallas; and for that purpose he shall have power, and it is hereby made his duty, to use and employ all proper and necessary force or assistance." It further required the mayor to "direct the chief of police to remove or abate said obstructions or encroachments without delay; and said chief of police shall thereupon proceed so to abate and remove the same."

The property of appellees jutted out into the street five feet further than did the property of owners on either side of them, and it was fenced. The mayor instructed the chief of police to remove the fence, which was done, and the space of five feet was converted into a sidewalk. This action was duly reported to the city council by the chief of police, and his action in the premises was acquiesced in by said council. The property so appropriated has been used as a sidewalk by the public ever since, and appellees have been deprived of its use and control as their private property. The city never disclaimed the right to use said property as a sidewalk, unless its answer in this suit denying its liability for the acts of its mayor and chief of police may be considered a disclaimer.

The property of appellees jutting into the street as it did, was an obstruction to public travel, and the city of Dallas had the right under its charter to remove the obstruction by legal condemnation proceedings. This its agents saw proper not to adopt, but proceeded illegally to appropriate the property of appellees to public use, which made them trespassers. Although trespassers, they were acting within the scope of the powers of the city to appropriate private property to public uses under its authority, but in an illegal manner.

The city council had authority to open, widen, and improve streets. The exercise of this power by its officers, under its authority, though done in an illegal way, renders the city liable for damages for any injury done by them in the execution of such powers.

We are of opinion that the action of the city council manifested an intention to appropriate the property to public use. "No especial formality is required by law to manifest the intention to apply the property to public use, though certain formalities are indispensable to a legal condemnation. The intention may be presumed from the fact that the city authorities, claiming to exercise the right, did actually take and appropriate the property to the public use without disclaim-

ing that such was their purpose." City of East Dallas v. Barksdale, 83 Texas, 117.

Mr. Dillon, in his work on Municipal Corporations, section 971, in discussing the liability of municipal corporations under circumstances similar to those governing this case, says: "If in exercising its power to open or improve streets, or to make drains and sewers, the agents or officers of a municipal corporation, under its authority or direction commit a *trespass upon or take possession of private property*, without complying with the charter or statute, the corporation is liable in damages therefor. In such cases, also, an action will lie against a city corporation by the owner of land through which its agents have unlawfully made a sewer, or for trees destroyed, and injury done by them."

The language used by Mr. Garrett, J., in Barber v. City of East Dallas, 83 Texas, 147, we think is applicable to this case. He says: "The transaction out of which the defendant's liability grew was one within the general power of the city to open streets, and would imply a corporate liability if the Constitution had not created it in special terms. Although in the nature of a tort, the liability is a fixed one growing out of the exercise of powers conferred upon the defendant by law; and although the law prescribes the manner in which property may be condemned and taken for the use of a street, the failure of the defendant to follow the method pointed out by law does not change its liability for whatever damage the plaintiff's property may have sustained."

The Constitution prohibits the taking or damaging of private property for the use of the public without first rendering compensation therefor. Appellees' property was taken by the agents of appellant in utter disregard of this fundamental right, and appellant must respond in damages therefor.

The appellant contends that the judgment is erroneous, in that it requires appellant to pay a debt for which there was no provision made at the time of its creation for levying and collecting a tax to pay the interest and provide a sinking fund.

This is an obligation that arises not by contract, but by tort, and does not fall within the purview of article 11, sections 5 and 7, of the Constitution, which requires the city council at the time of creating a debt against the city to provide for the levying and collecting a tax to pay interest and provide a sinking fund.

The city council did not intentionally create this obligation, but by the wrongful acts of its agents the law fixes its liability, and it can not claim that the creation of its liability in such manner is ultra vires, and thereby escape the payment of this claim. If such responsibility could be thus avoided, no recovery could ever be had against a municipal corporation for the tortious acts of its agents. The law having

fixed the liability, the city council should devise ways and means for its payment.

The only other contention of appellant which we deem necessary to notice is embraced in its fourth assignment of error, which is as follows: "The court erred in rendering judgment compelling defendant to pay plaintiffs for the land described in said judgment, and divesting the title to said land out of plaintiffs and vesting the same in defendant, because there was no pleading that would justify such a judgment."

This assignment is not well taken. The court should have decreed to the city an easement over the land, but instead, the judgment decrees the title to the city. It was optional with appellees to sue for the land or sue for damages. They elected to sue for damages, and as they are entitled to recover for the value of the property so appropriated, the city was entitled to the use and control of the land for street purposes, and as there is no complaint on this score by appellees, the judgment will not be disturbed. City of East Dallas v. Barksdale, supra.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered May 23, 1894.