# Ernest Menar, Mayor of the City of Oakdale, et al. v. Sanders, Executrix, et al.

(Decided March 22, 1916.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Municipal Corporations—Taxing Power—Constitutional Limitation.—Section 157, Constitution, limiting the tax rate of cities of less than ten thousand population to seventy-five cents on the hundred dollars; forbidding such cities to incur, in any manner, or for any purpose, in any year, an indebtedness in excess of the income and revenue provided for such year, without the assent of two-thirds of the voters of such city, voting at an election held for that purpose, and declaring void any indebtedness contracted in violation of the section, applies only to indebtedness which arises from contract and not to liabilities imposed by law for tort. Hence the fact that the city has for several years reached the limit of its indebtedness and tax rate under the section is no ground of defense in an action against the city authorities to compel the levying and collecting of a tax sufficient to pay a judgment on a verdict for damages sustained by reason of the unsafe condition of a street of the city.

CHARLES CARROLL for appellants.

HUBBARD & HUBBARD for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Clarence W. Sanders, deceased, received injuries by being thrown from a wagon in driving on one of the streets of Oakdale, a city of the fifth class, which injuries resulted in his death. Thereafter his widow, the appellee, Elvira T. Sanders, as executrix of his will, brought an action in the Jefferson circuit court to recover of the city of Oakdale damages for his death, alleged in the petition to have been caused by its negligence in maintaining the street in question in such a defective condition as to render it unsafe and dangerous for use by vehicles. The trial resulted in a verdict in her behalf for $2,000.00. From the judgment entered thereon the city of Oakdale, without executing a supersedeas bond, prosecuted an appeal to this court, which affirmed the judgment. (See 155 Ky. 352.)

Execution having been issued upon the judgment and returned "no property found," and the city of Oakdale persisting in its refusal to pay same, appellee, as

executrix, instituted this action in the Jefferson circuit court, chancery branch, first division, against the mayor, members of the council, treasurer, clerk and marshal of the city, asking that they be compelled by the writ of mandamus to levy and collect a tax upon all taxable property situated within the corporate limits of the city, sufficient to pay and satisfy her judgment, interest and costs.

The appellants filed a general demurrer to the petition, and, without waiving same, also filed an answer, containing two paragraphs; the first, by way of legal conclusion, denying the right of appellee to the writ of mandamus. In the second paragraph it was alleged that the city of Oakdale has a bonded indebtedness of $25,000.00, incurred for the purpose of constructing sewers, and $10,000.00 for street construction; that these bond issues were authorized ''by a proper vote at a proper election,'' and that the bonds were sold and the money applied to the purposes mentioned; that in order to pay the interest upon this bonded indebtedness, create a sinking fund to pay the bonds at maturity, raise a fund sufficient to pay the current expenses of the city and enable it to perform its governmental functions as an arm of the state, it had been necessary for several years prior to the year of the institution of appellee's action, and for that year, to levy a tax of seventy-five cents on each one hundred dollars of taxable property within its corporate limits, and that such tax had been levied each year, including the present year, for the purposes mentioned, and when so collected it was divided and appropriated as indicated.

The answer concludes with the following averments:

''Defendants further say that said city has no other money than such as it raised as above stated, and all of same has been and is applied for the purposes above mentioned, and it has no money and is unable to raise any money for the purpose of paying off the judgment of plaintiff in petition mentioned, and it has no constitutional power to increase its rate of taxation over seventy-five cents on the one hundred dollars, and it has no constitutional right to apply any proportion of the fund so raised to any other purpose than as herein above stated.''

Appellee filed a general demurrer to the answer and each paragraph thereof. Upon the submission of the

case on the pleadings the circuit court overruled the general demurrer of the appellants to appellee's petition, sustained the general demurrer of the appellee to the first and second paragraphs of appellants' answer, and granted the writ of mandamus prayed by appellee. Appellants' dissatisfaction with the judgment manifesting these several rulings led to this appeal.

The only question involved on this appeal is as to the proper construction of section 157 of the state constitution, which provides:

''The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz: For all towns or cities having a population of fifteen thousand or more, one dollar and fifty cents on the hundred dollars; for all towns or cities having less than fifteen thousand and not less than ten thousand, one dollar on the hundred dollars; for all towns or cities having less than ten thousand, seventy-five cents on the hundred dollars; unless it should be necessary to enable such city, town, county, or taxing district to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this constitution. No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforcible by the person with whom made; nor shall such municipality ever be authorized to assume the same.''

It is the contention of appellants that under no circumstances has a city of less than ten thousand population, like Oakdale, the right to levy a tax, for other than school purposes, in excess of seventy-five cents on the hundred dollars of taxable property in the city; and that as the Oakdale tax rate has already reached that limit and the whole of the tax realized is required to pay the current governmental expenses of the city, interest on its bonded indebtedness and provide a sinking fund for the retirement of its bonds at maturity, it cannot legally be compelled to levy a further or additional tax to pay

appellee's judgment. In support of this contention emphasis is given by counsel to the words of section 157, constitution, hereafter italicized: ''The tax rate * \ * * for other than school purposes, *shall not at any time,* exceed * * * for all town or cities having less than ten thousand, seventy-five cents on the hundred dollars * * * ,'' it being argued that the expression ''shall not at any time,'' is so mandatory in character and unmistakable in meaning as to exclude any and every contingency that would allow the tax rate of seventy-five cents to be exceeded. In other words, that there is no exception or proviso to which the words ''shall not at any time,'' do not apply; therefore, that it applies to any indebtedness of a city of less than ten thousand population, whether created by contract or cast upon it by law. It is conceded that the subsequent part of section 157, in providing that ''no county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted *in any manner or for any purpose, to an amount exceeding, in any year, the income provided for such year* without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void,'' etc., intends to apply the inhibition thus declared to contractual indebtedness alone; but insisted that whether the indebtedness of the city in any year, in excess of the income provided for such year, should arise out of a tort committed by the city, or be incurred by consent of two-thirds of the voters thereof, voting at an election to be held for that purpose, the tax levy to pay it and meet all other governmental expenses of the city, except for school purposes, is nevertheless confined to seventy-five cents on the hundred dollars by the limitation contained in the words, ''shall not at any time exceed * * *' seventy-five cents on the hundred dollars * * *.''

Appellants' contention wholly ignores the clearly expressed object of section 157, which was and is, not to shield municipal corporations from the liability imposed by law for wrongs occasioned by their negligence, but to protect them from their own improvident acts and extravagance. In other words, the limitations contained in that section apply to indebtedness created or attempted to be incurred by the municipality by contract. They have no application where the liability incurred by the municipality is for a tort caused by or resulting

from its own negligence. Such is the meaning we have repeatedly given this section.

One of the cases in which we so held is that of Hopkins Co., etc., v. St. Bernard Coal Co., etc., 114 Ky. 153. The question presented was whether an action in favor of the sheriff and his posse would lie against the county of Hopkins and members of its fiscal court, under section 1241a, Kentucky Statutes, for $2,408.00, claimed for guarding, by order of the county judge, the property of the St. Bernard Coal Company against threatened mob violence. It was contended by the defendants that the statute under which the county judge ordered the guarding of the property was unconstitutional and that the liability sought to be imposed on the county was in violation of section 157 of the constitution, but both contentions were rejected by the circuit court and the recovery allowed. In affirming that judgment we said:

"It is a part of the history of this state that in times of popular excitement many of the counties and towns of the state had voted subscriptions to railroads and other public improvements, which had well-nigh wrecked them; and this section of the constitution, which was borrowed from other states, was adopted as a remedy for the evil. Beard v. Hopkinsville, 95 Ky. 237 (15 R. 756), 24 S. W. 872, 23 L. R. A. 402; 44 Am. St. Rep. 222. In Belknap v. City of Louisville, 99 Ky. 486 (18 R. 313), 36 S. W. 1118; 34 L. R. A. 256, 59 Am. St. Rep. 478, construing this provision, the court said that the object of the provision was to protect the people from their own improvidence and that of their officials. That improvident contracts were in the mind of the framers of the constitution is shown by the concluding words, 'nor shall such contract be enforcible by the person with whom made.' The prohibition is against becoming indebted or voluntarily incurring a legal liability. The words, 'no county * * * shall be authorized or permitted to become indebted,' cannot reasonably refer to the necessary expenses of the governmental functions of the county, which are compulsory obligations cast on it by law, but only to that class of which is optional with the county to incur. Any other construction, as has been well said, would destroy the fundamental safeguards and bulwarks of organized society. Barnard & Co. v. Knox Co. (C. C.), 37 Fed. 563, 2 L. R. A. 426; Rauch v. Chapman (Wash.), 48 Pac. 253, 36 L. R. A. 408, 58 Am. St. Rep. 52; Grant County v. Lake County, 17

Or. 453, 21 Pac. 447; Sackett v. New Albany, 45 Am. Rep. 461. The duty of preserving the public peace and protecting life and property cannot be avoided because the income provided for the year by the fiscal court will be insufficient to pay the guards provided by the statute. It is the duty of the fiscal court to provide a sufficient fund for this purpose when the necessity arises, if it has not been provided before. It was not the purpose of the constitution to disable the municipalities of the state from maintaining the public peace or protecting the good name of the state. * * *". O'Brien v. City of Owensboro, 113 Ky. 680.

If the emergency held to exist in the case *supra* imposed upon Hopkins county an indebtedness in excess of its annual revenue without the assent of two-thirds of the voters of the county, because of the duty resting upon the authorities thereof of preserving the public peace and protecting life and property, such duty was no higher or greater than that which rests upon the authorities of a city to maintain its streets in such reasonably safe condition as that their use will not endanger the lives or persons of those entitled to travel upon or otherwise use them. It should here be remarked that the cases cited by counsel for appellants, involving the construction of section 157, constitution, are all cases in which it was considered with reference to indebtedness created by contract, which necessarily came within the inhibitions of the section. Although the precise question here involved has never before been presented to this court for decision, it has been passed on in other jurisdictions, the decisions in each instance being adverse to the contention of the appellants. The decisions in these jurisdictions will be found to accord with the views expressed by leading text writers. Thus, in Gray on ''Taxing Power and Public Indebtedness,'' section 2089, it is said:

''Limitations on the debt contracting power of municipalities are not intended to enable a municipality to escape liability for its torts. It was the purpose of those who framed such limitations to prevent the increase of lawful debt, not to deprive persons who have been injured by the municipality of all effective remedy; hence it is generally no defense to an action in tort against a city to say that the city is already indebted to the constitutional limit. Perhaps it is more technically cor-

rect to say that the city is estopped to set up the de, fense."

Among the cases sustaining this doctrine is that of Conner v. Nevada City, 188 Mo. 148, 86 S. W. 256. It appears from the opinion that the constitution of the state of Missouri contains provisions identical with those in section 157 of our constitution, the provisions being found in sections 11 and 12 of article 10 thereof, the first putting a limit on the tax rate that may be levied by a municipal corporation, and the second a limit to the indebtedness such corporation is allowed to create. The action was one of damages for personal injuries sustained by the plaintiff through the negligence of the city of Navada in failing to keep its streets in reasonably safe condition for use by the public. The defense interposed was that the city could not be made liable as it had already exceeded the limit of its indebtedness as fixed by section 12, article 10, of the state constitution, and had levied all the taxes that it was permitted to levy under section 11 thereof. As the case seems to have been well considered and the conclusions reached are abundantly supported by authority, we quote at length from the opinion:

"1. The first point presented in the brief of appellant is that, under the terms of sections 11 and 12 of article 10 of the constitution, the defendant, which is a city of the third class, is not liable in this kind of an action. The proposition is that section 11 puts a limit on the rate of taxes that may be levied in such cities for city purposes, and section 12 puts a limit on the amount of indebtedness which the city may incur, forbidding the incurring in one year indebtedness to an extent in the aggregate beyond the revenue to be derived from the taxes of that year. The argument is that the tax rate was limited to produce only sufficient revenue to meet the necessary expenses of the city, and the incurring of all liability beyond that was forbidden, and that this, by necessary implication, makes it unlawful for the city to incur liability for its acts of negligence, because liability of that kind is indefinite, and in a sense unlimited. Appellant concedes that, in numerous cases that have come before the courts of this state since cities have been limited by the constitution in their power to incur indebtedness, they have been held liable in damages when they have wrought injury by neglect of duty, but insists

that the courts in so holding have passed in silence over
the point now raised, and that it has not been decided.
The clause of the constitution in question deals with the
subject of incurring indebtedness which arises *ex con-
tractu,* and which is very different in its nature from
suffering liability for a tort. The language of section
12 is that the city shall not be allowed to become indebted
in any manner or for any purpose to an amount exceed-
ing in any year the income and revenue provided for such
year, without the assent of two-thirds of the voters
thereof voting at an election to be held for that pur-
pose. This language shows that it is indebtedness in-
curred by assent, agreement, or contract. The word
'debt' has a well-recognized meaning in law, distin-
guished from liability for damages. After a claim for
damages is reduced to a judgment it becomes in a tech-
nical sense a debt, but it is a debt imposed by law, not
one assumed by contract. What our constitution aims
to control is the action of the municipal corporation in
the matter of contracting debts. For definition and
discussion of the term 'debt,' see 13 Cycl. L. & P. p. 393
et seq., and cases cited in the notes. In Smith on Mun.
Corp., sections 4-6, the author divides public corpora-
tions into two classes, municipal corporations and public
quasi corporations, and to these he adds a third class,
quasi public corporations. The first includes incorpor-
ated cities, towns, and villages; the second, counties,
townships, school districts, etc.; and the third, railroad,
grain elevator, telegraph companies, etc. The generic
difference between the two first, the author says, lies
in the fact that cities, towns and villages are created at
the request, or at least with the consent, of their mem-
bers, and for their benefit, while public quasi corpora-
tions are mere local sub-divisions of the state, created
by the sovereign will, to exercise certain duties in aid
of the state government, and, inasmuch as the sovereign
is not liable for neglect of duty, the quasi public cor-
poration acting for the state is not liable unless made
so by statute, but that municipal corporations to whom
are given certain powers to be exercised for the benefit
of its inhabitants, in the doing of acts which the state
does not do, are liable for the consequences of neglect of
duty in the performance of those acts. The author also
points out the distinction between acts of a municipal
corporation in the discharge of its delegated govern-

mental authority and those in the discharge of its ministerial duty, holding that in the first the city is not liable for dereliction, and in the second it is. In a note to the text (section 6, note 20) the author says: 'The rule, stated briefly, seems to be that, where a municipal corporation acts for a purpose purely and essentially public—acts as an agent for the state, and nothing more —the corporation is regarded as a part of the sovereign state, and cannot be sued for a tort, unless express permission by statute to bring such a suit has been given. But where municipal corporations act as private corporations, for the local benefit and advantage of their members they are liable in tort, just as private corporations would be.' In a very thoroughly considered case on this subject the Supreme Court of Texas, after citing the leading authorities, English and American, shows that the accepted rule of law is that, for neglect of duty in a matter of the kind then under consideration (failure to keep a street in reasonably safe condition), the city is liable in an action of tort, not by force of any statute, but by the common law. City of Galveston v. Posnainsky, 62 Tex. 118, Am. Rep. 517. The distinction between municipal corporations and what are above referred to as public quasi corporations, in respect of their liability for neglect of duty, is pointed out in 15 Am. & Eng. Ency. L. (2d Ed.) p. 420 et seq.; also Dillon on M. Corp. (4th Ed.) section 996 et seq. Reading along the lines above referred to, we see that the liability of a city for allowing its streets to remain so out of repair for an unreasonable time as to render them unsafe for use is a liability imposed by law; it does not depend on contract, it is not in the technical sense a debt. Then, when we turn again to the clause in our constitution on which appellant relies, we see that it refers only to the contracting of debts, and makes no reference to liability for torts; it leaves that matter as the common law left it. In 20 Am. & Eng. Ency. L. (2d Ed.) p. 1173, it is said: 'A city cannot escape liability from an obligation arising *ex delicto* on the ground that its indebtedness has already reached the constitutional limit.' And in a note to the text the author cites: McCracken v. San Francisco, 16 Cal. 591; People v. May, 9 Colo. 404, 12 Pac. 838; Bloomington v. Perdue, 99 Ill. 329; Chicago v. Sexton, 115 Ill. 230, 2 N. E. 263; Bartle v. Des Moines, 38 Iowa 414; Rice v. Des Moines, 40 Iowa 638; Dallas

v. Miller, 7 Tex. Civ. App. 503, 27 S. W. 498. Thus it will be seen that the question now presented, although perhaps not heretofore expressly decided in this state, has received judicial consideration in other states which have similar constitutional limitations, and, so far as the decisions have come to our notice, they hold that for a neglect of duty of the kind now in question the city is liable, even though it has reached the limit of its power to levy taxes and contract debts. It is not necessary to refer to any of the many cases in which we have held cities liable in such case without referring to the constitutional limitations referred to, because, as the learned counsel say, the constitutional question was not discussed; but now that our attention is expressly called to it, we see no reason to take back anything that we have heretofore said on the subject of the city's liability for its negligence in failing to keep its streets in reasonably safe condition for use by the public. We hold that there is nothing in our constitution to limit that liability."

In Bloomington v. Perdue, 99 Ill. 329, cited in the opinion *supra,* it was held that "in the trial of a case like this (an action for tort) we are of the opinion that a city cannot raise the question as to whether it is already indebted to an amount in excess of the constitutional limitation."

In Hagan v. Commissioners Court, 106 Ala. 544, 37 L. R. A. (N. S.) 1097, we find in the opinion the following statement of the doctrine in question:

"The courts are in harmony upon the proposition that debt limit provisions do not apply to obligations sounding in tort. Where an action for damages against a city is not based upon failure to grade its streets or to make gutters, but for the digging of the grade and making gutters in a careless, negligent and unskillful manner, it is no defense that at the time of the injuries, and long prior thereto that the city was indebted beyond its constitutional limit."

In Rice v. Walker, 44 Iowa 458, the plaintiff sued the city of Des Moines and recovered a judgment of $7,500.00 for personal injuries caused by a defect in a street. There seems to be no provision of the Iowa constitution limiting the indebtedness or taxing power of a city, but by section 496 of its code the taxing power of a city is limited to twelve mills on the dollar for all purposes. But, as appears from the following excerpt

from the opinion, it was held by the Supreme Court of that state that this limit upon the taxing power of the city of Des Moines did not apply to the plaintiff's judgment:

"Again it is obvious that section 496 of the code has no application to a levy of a tax for the payment of a judgment like the plaintiff's. His judgment, it appears, was recovered for personal injuries. Section 496 limits the amount which may be levied for general and incidental expenses."

It is further insisted, however, by counsel for appellants, that the cases referred to merely show that the defense of the city's indebtedness could not have been relied on to defeat the recovery of damages obtained by appellee in the action first brought by her, but that they do not hold that the fact that a city had already levied a tax reaching the constitutional limit cannot be relied on to prevent the satisfaction of such judgment. We confess our inability to see any force in this argument. The point attempted to be made is a distinction without a difference. The contention is self-destructive. Manifestly, if the city could not have defeated the recovery of the judgment upon the ground that the indebtedness of the city already reached the maximum limit allowed by the constitution, it cannot defeat a satisfaction of the judgment upon the ground that its taxing power had already been exercised to the limit fixed by the constitution. Moreover, the contention is fully answered by the reasoning in Conner v. City of Nevada, and Rice v. Walker, *supra,* and also by the case of Lawrence v. Bean (Wash. Sup. Court), 50 Pac. 582. In that case the plaintiff, who had previously recovered a judgment in damages against the city of Ellensburg for personal injuries caused by a defective sidewalk, brought an action for a mandamus against the city to compel it to levy and collect a tax sufficient to satisfy the judgment, but as the state of Washington had a statute which required the city to draw a warrant on its treasury for the amount of the judgment, it was held by the court that the plaintiff was not entitled to the mandamus compelling the city to levy and collect the tax, but should have applied for the issuing of the warrant. The court, however, directed the city to issue the warrant, and in so doing said:

"That the city had reached its 'limit of indebtedness,' if such be a fact, would not justify the officer in withholding the warrant as the authorities concur in holding that to be no defense in an action for personal injuries occasioned by negligence."

We regard the authorities *supra* decisive of the question under consideration as they convincingly demonstrate that for a neglect of duty of the kind here complained of, the city is liable, even though it has reached the limit of its power to contract debts and levy taxes. To hold otherwise would permit such municipalities, in every case like this, to take advantage of their own negligence and remove every incentive to the keeping of their streets and sidewalks in such repair as would make them reasonably safe for the use of the public. We fully concur in the conclusion reached by the circuit court, hence the judgment of that court should be and is affirmed. Whole court sitting.