CITY OF EAST DALLAS V. MRS. NANNIE BARKSDALE.

No. 3127.

1.  **Continuance—Want of Diligence.**—Where a suit had been pending for over two years and subpœna issued for the absent witnesses but a few days before the cause was called for trial, an application for continuance because of the absence of said witnesses was properly refused for want of due diligence to obtain the testimony on part of the party asking the continuance.

2.  **Liability of City for Taking Land for an Alley.**—The city of East Dallas by its city council ordered the opening of an alley. The city marshal executed the order, thereby *taking* a strip of land 200 feet long, and seven feet wide at one end and three at the other. The plaintiff had been in possession for many years, as had her grantor. It was her homestead. The city exhibited no right to the land, no condemnation proceedings, nor any offer of compensation. It held the possession thereafter. *Held:*

1.  As the city was a mere trespasser, it was optional with plaintiff to sue for the land and for damages for the trespass, or to sue for damages alone as the consequence of the unlawful appropriation of her property.

2.  The plaintiff having sued for and obtained judgment for the value of the land taken, and thus having elected to ratify its appropriation, it was not improper for the court to vest the title in the city upon the satisfaction of the judgment.

3.  Possession as shown was sufficient title to support the judgment for damages.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE. The opinion states the case.

*Coombes & Gano*, for appellant.—1. A municipal corporation has the right to take possession of property under a bona fide claim of title, without subjecting itself to condemn it against its will in case its title should be held defective.

2. There must be an intention on the part of the city council to exercise its powers of eminent domain before the city can be held responsible for an illegal exercise of such powers. Rev. Stats., art. 478, sec. 1.

3. Where the title itself of the land is involved, or where the suit is for damages to the fee, plaintiff must deraign title from the State or a common source, or fail in the suit.

*George H. Plowman*, for appellee.—1. The court did not err in overruling appellant's motion for continuance, because same is not in compliance with the law. Rev. Stats., art. 1278; Parker v. Campbell, 21 Texas, 764; Conner v. Sampson, 22 Texas, 20; Pulliam v. Webb, 26 Texas, 95–98; Brown v. Bank, 70 Texas, 750; Watson v. Mfg. Co., 66 Texas, 558; Arnold v. Hockney, 51 Texas, 46.

2. Having condemned the alley by ordinance, and having actually seized and appropriated it for public use, vesting title in the city (it being already in possession), is no cause of complaint, and the judg-

ment is correct, and it has been so held. Railway v. Merkel, 32 Texas, 725.

3.  Compensation is secured to parties by the Constitution and laws for property taken for public use. Const. 1876, sec. 17, art. 1; Railway v. Ferris, 26 Texas, 588–603; Railway v. Merkel, 32 Texas, 725.

4.  Condemnation though provided by statute as the remedy by which lands are to be taken, yet if a corporation fails to avail itself of this right and enters and takes land and appropriates it to public use, the owner can sue for the land or the damages. Railway v. Benitos, 59 Texas, 326; Hays v. Railway, 62 Texas, 398–400; Railway v. Pfeuffer, 56 Texas, 66; Railway v. Jarrell, 60 Texas, 268; Railway v. Poindexter, 70 Texas, 105; Ewing v. St. Louis, 5 Wall., 413; 18 U. S., 657.

MARR, JUDGE, *Section B.*—The appellee instituted this suit on the 18th day of May, 1887. There are two counts in her petition. In one of them she seeks to recover "a strip of land two hundred feet long and seven feet wide at one end and three feet at the other end," and damages for the unlawful entry upon the land and the ouster of herself therefrom by the defendant. In the other count she claims damages for the value of the land taken by the defendant, and such other damages as resulted from the acts of the defendant in their effect upon the remainder of her homestead, etc. She charges, in substance, that the defendant in an attempt to exercise the right of eminent domain, and for the purpose of widening a certain alley in the city of East Dallas, and upon which plaintiff's homestead abutted, unlawfully entered upon, took possession of the said "strip of land," and tore down, removed, and injured her fence and appropriated this land for the purpose aforesaid, but without complying with the law in that particular, or making her any compensation whatever. We may as well observe in this connection that the very great preponderance of the evidence sustained these allegations. The case was tried without a jury, and the court gave judgment for $613.33⅓ in favor of the plaintiff as her damages, and further decreed, that the title to the strip of land in controversy should be "vested in the defendant, the city of East Dallas." The defendant has appealed.

  The first error assigned is to the effect that the court erred in overruling the application for a continuance made by the defendant on account of an absent witness. The bill of exception does not disclose how many continuances had already been granted to the defendant in the case. The number of the application is not stated. The ruling of the court can not be revised as the question is presented. Headly v. Beardslee, 16 S. W. Rep., 1011. We may remark, however, that there was a fatal absence of diligence. The cause had been pending more than two years before any process was obtained for the witness, and was then sued out only a few days before the trial.

The appellant's counsel also make the following assignments of error, which are grouped in the brief and practically relate to the same question, viz.:

"Second assignment of error: The court erred in rendering judgment for the value of the land, and the damage done by cutting it off from the remainder, after decreeing that the plaintiff owned it.

"Third assignment of error: The court erred in vesting the title to the land in the defendant against its will and making it pay therefor, after decreeing that the plaintiff owned it.

"Fourth assignment of error: The court erred in condemning the land in controversy to public uses and rendering a moneyed judgment against the defendant, since the defendant never sought any condemnation of the property, and the facts showed only a bona fide controversy as to title.

"Sixth assignment of error: The judgment of the court is contrary to and violates the law, since the evidence showed that this was a controversy in good faith over the title to the property, and the judgment deprived the defendant of the right to test title to the property without being compelled to condemn against its will the land it claimed."

The solution of the questions here presented requires a summary of the evidence adduced upon the issue. It will be seen that the claim of the appellant is, that it was not the purpose or intention of the city authorities to condemn the land in dispute, but that they took the same under a claim of right or title previously existing and still existing at the time of the taking. In other words, as appears from the evidence offered by the city upon the subject, the appellant claimed in the court below, under a plea of not guilty, that the land in dispute did not belong to the plaintiff, but was in fact already a part of the alley long since established by the proper authority and in the proper manner, and consequently that this is the extent of the assertion of any right or claim to the land by the city; from which it is insisted that the court below mulcted the defendant in damages and forced the condemnation of the land upon the city, without its consent and contrary to its intention, as expressed by acts or declarations. It might be held that the plea of not guilty admitted the plaintiff's title or "right of possession in the locus in quo," as the action was reduced at the trial below to one of trespass and for damages only, and that defendant can not justify its acts by proving paramount title in itself without pleading the same. Carter v. Wallace, 2 Texas, 206. We prefer, however, not to rest our decision upon that ground, as there might be some doubt of the exact applicability of that principle to the issues in this case. The claim of the defendant to the land, however, if sustained by the proof, could not amount to a complete justification of the trespass upon and disturbance of the plaintiff's actual possession and inclosure, committed without a resort to any legal methods for obtaining the

possession of the land.   As there are no conclusions of the court below in the record, it may be that the court allowed the damages only for trespass and not for the value of the land; and as there is evidence to support such a finding, it does not appear, therefore, in this view of the case, that the judgment for the damages is erroneous.   Possibly the city may have been awarded more and the plaintiff less than she was entitled to under the law.

We recur now to the other view of the case as presented in the foregoing assignments. · Was it the purpose of the city to take the land for public purposes?   The plaintiff proved that she was in the actual possession of the land and that it was a part of her homestead, and that "the strip" had never been a part of the public alley.   It was within her inclosure.   She and her husband, Judge Barksdale, had occupied for years before his death, and she occupied it thereafter. She is the sole devisee of her husband under his will, etc.   She introduced deeds down from one, who was proved verbally (without objection) to have been the owner of the land, to her husband.   She also proved the following facts:   That the city of East Dallas had passed through its common council an ordinance for "widening the alley" in question, and that the city marshal, acting under the orders of the mayor of the city, and in the presence of the chairman of the street committee, actually widened the alley to the extent claimed by the plaintiff, tore down her fence and "moved it back into her yard," and entirely dispossessed her of the "strip of land in dispute," over her earnest protest, and without any offer of compensation to her, or any efforts for the assessment of or any agreement upon the amount of damages upon the part of the city authorities.   In short, a high-handed outrage upon the rights of property as guaranteed in the Bill of Rights was committed by the city authorities, if the plaintiff's evidence states the real facts occurring at the time when she was dispossessed.   She testified concerning the manner in which her protest against the tearing down of her fence, etc., was received, to the following effect: That she was sick in bed on the day they took the land.   She went and told them that if her husband was alive they would not do it.   That they told her to attend to her own business, or something like that, and that if she did not go in the house and shut her mouth they would come and take her *house.*   Yet the court only allowed a sum as damages which is less than the value of the land actually taken, according to the only testimony on that point.   The plaintiff testified that the value of the strip of land was $1000.   None of the witnesses placed the amount of damages at less than $1000, taking into consideration the value of the land appropriated and the effect of the act upon the balance of the homestead, etc.   Rev. Stats., art. 4193.

We state these facts, because they bear upon questions presented by the remaining assignments and constitute an answer thereto.

Joe Beeman, who was city marshal at the time of the trespass, testified to the removal of plaintiff's fence and the "widening" of the alley, and that "the city council had passed an ordinance requiring this to be done; that he was notified, by order of the city council, to go there and remove the fence back." The defendant introduced one witness, who gave evidence to the effect that the fence of the plaintiff was in the alley as established by the city engineer, and that "it was moved back and put upon the line as fixed by the engineer, and that no damage or injury was done the fence in its removal." There was no other proof of defendant's right to "the strip of land," or that it had ever been previously condemned or dedicated as a part of the alley.

We are of the opinion that there is abundant evidence to support the conclusion that it was the purpose of the city to condemn, or at least appropriate, the land in dispute to public purposes and make it a part of the alley in question, and not merely to assert a right to an easement which it had already acquired in the land and in accordance with the law. That the defendant did thus take and appropriate the property there can be no question. Equally plain is it also that the city did appropriate the property without any pretense of making compensation to the owner, or of taking any steps to agree with the owner upon the amount of damages, or to have them assessed in the mode provided by law. Gen. Laws 18th Leg., p. 36; Acts 1889, pp. 3, 4. No especial formality is required by law to manifest the intention to apply the property to public use, though certain formalities are indispensable to a legal condemnation. The intention may be presumed from the fact that the city authorities, claiming to exercise the right, did actually take and appropriate the property to public use without disclaiming that such was their purpose. The defendant entered no disclaimer at the trial below, and nowhere in its pleadings did it offer to restore the land to the plaintiff or abandon all claims thereto, except as it might show under a paramount right, had this been pleaded. The appropriation to public use by defendant was complete, and was done with that intent, as we think, but in violation of the mode prescribed by law. The prescribed formalities must be strictly observed in order to divest the owner of his property by the exercise of the right of condemnation for public benefit, and in this case the defendant had no right to actually take the property as it did do, before the compensation had been agreed upon or the damages assessed by the proper tribunal and actually paid to the owner, or "secured by a deposit of money," as required by the Constitution. Bill of Rights, sec. 17.

It was the duty of the city to have taken the initiative in these respects, for the making of compensation was an indispensable condition precedent to the taking or the appropriation of the land, unless the owner had given consent. This much is plainly deducible, not only from the emphatic language of the Constitution, but from the decisions

of our courts in analogous cases. Railway v. Donahoo, 59 Texas, 133; Railway v. Ortiz, 75 Texas, 606; Railway v. Ferris, 26 Texas, 588; Ackerman v. Huff, 71 Texas, 317. We conclude that in taking and appropriating the plaintiff's land to public use the defendant was a mere trespasser, and that in such case it was optional with the plaintiff to sue for the land and for damages for the trespass, or for damages alone as the consequence of the unlawful appropriation of her property, including the value of the same. Authorities supra, and Hays v. Railway, 62 Texas, 400; Railway v. Benitos, 59 Texas, 326; Railway v. Poindexter, 70 Texas, 105; Railway v. Adams, 63 Texas, 200.

The plaintiff having sued for and obtained judgment for the value of the land, or at least of the easement (as may be inferred from the nature of the judgment), and thus elected to ratify its appropriation, it was not improper for the court to vest the title in the defendant upon the satisfaction of the judgment for damages. The court did more than this, and in fact vested the title in the defendant without first requiring the payment of the damages awarded; but of this the appellant can not complain. The appeal bond will perhaps afford security to the plaintiff. Railway v. Donahoo, supra; Railway v. McKinsey, 78 Texas, 298; 59 Texas, 329; 7 Lawson on Rights and Rem., sec. 3678.

The remaining assignments of error present practically the same questions which we have already disposed of, except that it is further claimed that the plaintiff proved no such title as authorized the recovery of damages. Actual and exclusive possession of the property, to say nothing of the other proof of title, was sufficient prima facie evidence of ownership to justify a full recovery, including the value of the land, as against a mere trespasser. Railway v. Cullers, 81 Texas, 382; Holman v. Herscher, 16 S. W. Rep., 984, and cases cited.

We think that the judgment should be affirmed.

*Affirmed.*