Herbert J. ZIEBEN, Appellant,

v.

Joseph KRAKOWER et al., Appellees.

No. 13513.

Court of Civil Appeals of Texas.

Houston.

May 4, 1961.

Rehearing Denied May 25, 1961.

Melvin S. Cohn, Barrow, Bland & Rehmet, Sidney Farr, Houston, for appellant.

Martin & Black, John A. Black, Jr., Bellaire, for appellee.

BELL, Chief Justice.

This is an appeal from a judgment permanently enjoining appellant, so long as certain restrictions were in effect in Southwood Addition to the City of Houston, from building, attempting to build, renting, occupying or operating any multi-family or duplex building on the East 10 feet of Lot 24 and all of Lots 25 and 26 in Block 4 of Southwood Addition.

In 1930 restrictions were placed on Southwood Addition providing that no duplexes or multi-family residences could be built on any of the lots in Blocks 3 to 11, inclusive, or any lot on the south ½ of Blocks 1 and 2. The restrictions allowed two-story duplexes to be built on the lots on the north ½ of Blocks 1 and 2. The restrictions further forbid the erection of garages for temporary use and provided such should be built at the same time as the residence and should conform in every way to the restrictions. The restrictions were to be effective until January 1, 1955, but an extension of the restrictions for a period of 10 years from the expiration date if extended by the then owners of a majority of the square footage of the property in the Addition, if made within 5 years of the expiration date, was authorized.

The effect of the restrictions was to make the Addition one where only single family dwellings were permitted except on the lots on the north ½ of Blocks 1 and 2. It seems to be conceded that this excludes garage apartments to be used by other than members of the family.

In 1952 an extension agreement was executed extending the restrictions until January 1, 1965. Various attacks, which we will notice later, were made upon the validity of the agreement as made by the record in the trial court. The trial court held the agreement valid as a matter of law under the record before him.

The appellant, in September, 1956, purchased the East 10 feet of Lot 24 and all of Lots 25 and 26, Block 4. He began, sometime later, to convert the single family dwelling on the property to a multi-family dwelling and also to build additional structures in violation of the restrictions. This suit resulted. Appellant pled abandonment of the restrictions because of alleged violations by others and also waiver by the appellees.

There was a jury trial and the jury answered as follows:

1. At the time of the filing of this suit (February 19, 1957) the erection of multi-family dwellings was not so prevalent as to constitute an abandonment of the restrictions.

2. At the time suit was filed the Addition had not generally become one in which rooms and apartments were occupied by persons other than members of a single family.

3. Appellees had not waived the restrictions.

Appellant contends the court erred in holding the restrictions were validly ex-

tended. The attack is based on two contentions:

1. The evidence fails to show that the persons who signed the extension agreement were the owners of property at the time the extension agreement was signed.

2. There were two groups of persons who signed the agreement who were not shown to have ever been the owners of property in the addition. The first group is made up of persons where the deed into them ran to them in a Christian name followed by the surname but the extension agreement was signed by initials followed by the surname. In this group are also persons where the deed to persons was by initials followed by the surname but the extension agreement was signed by a Christian name followed by the surname. The second group is made up of those married women signing the extension agreement not by their Christian name but by the name of the husband with the prefix "Mrs." In some cases the deeds had been to the husband and the wife in her Christian name and in others the deeds had been to the husband alone, the deed not showing whether the man was married at the time of the deed into him.

There were other groups of persons signing whose right to sign was attacked in the trial court. However, the parties have agreed in many instances so that it is material for us to consider only the groups above mentioned. If appellant is correct as to either group, then the requisite amount of square footage is not present to validly extend the restrictions. If appellant is incorrect as to both groups, there is sufficient square footage even though appellant be correct in his attacks on various other groups not here specifically mentioned. In some of the unmentioned groups appellees have conceded appellant is correct and even where, as to other groups, appellees make no concession, the square footage represented by such groups would not de-

stroy the validity of the extension agreement.

The first contention of appellant is that while the evidence shows that the persons, with some few exceptions not here material, who signed the extension agreement had been conveyed a lot or lots in the addition (it was so stipulated), there was no evidence that the conveyances were *prior* to the date the extension agreement was executed.

■ The extension agreement was filed for record with the County Clerk of Harris County May 21, 1952. It was recorded in the Deed Records in Vol. 2445, pp. 100–170. (Actually there were six separate instruments that make up the extension agreement and they are all included in the volume and pages stated). Every deed shown on Exhibit A of Plaintiff was recorded in the Deed Records in a volume with a lower number than Volume 2445. The deeds into the persons signing the extension agreement were, according to said Exhibit A, recorded at various places commencing with Vol. 830 and ending with Vol. 2436. The parties stipulated that "each deed listed in Exhibit A of plaintiff's motion for summary judgment * * * conveyed to the person or persons listed as grantee * * * the lot or lots indicated by said Exhibit A." Appellant says the stipulation does not, however, state that such conveyance took place *prior* to the extension agreement. Appellees counter that when the above quoted stipulation is considered with paragraph III of the stipulation it is shown that the conveyance was prior to the stipulation. Paragraph III reads as follows:

"Each lot set out in Exhibit 'A' of Plaintiffs' Motion for Summary Judgment was the homestead of the owner or owners thereof on the particular date that the purported owner or owners of such lot, according to said Exhibit 'A', purportedly signed and acknowledged the renewal instruments

described in paragraph IV of plaintiffs' Original Petition and recorded in Volume 2445, pages 100 to 170, inclusive, of the Deed Records of Harris County, Texas. Paragraph III of this stipulation does not apply to those lots listed on Exhibit 'A' with respect to which the facts are shown to be such that the laws of the State of Texas do not allow a homestead."

We need not determine the correct interpretation of the two paragraphs of the stipulation standing alone, because we are of the view that when it was stipulated that "each deed * * * listed on Exhibit A * * * conveyed to the person or persons listed as grantee opposite such deed on said Exhibit A, the lot or lots indicated on said Exhibit A" there was, when we consider also that Exhibit A showed each deed to have been recorded in a volume lower than the volume where the extension agreement was recorded, evidence showing that the lots were conveyed to the persons executing the agreement *prior* to the extension agreement.

■ Article 6595, V.A.T.S., 1925, enjoins upon the recorder (County Clerk) the duty to record every instrument filed with him, which is authorized to be recorded, *in the order in which* the instruments were deposited with him. It will be presumed, in the absence of evidence to the contrary, that the County Clerk, a public official, performed his duty in this regard and recorded the various instruments here involved in the order in which filed. The only reasonable inference to be drawn, we think, is that the deeds recorded in the lower numbered volumes were deposited and recorded before the extension agreement was executed and recorded. It is of course possible that a deed could have been executed after the grantee signed the extension agreement, but recorded prior to the extension agreement. No evidence suggests such. In any event, what we have said

affords evidence to support the trial court's conclusion that the extension agreement was valid.

Appellant suggests the conveyance might have been made to the persons signing the agreement *after* they had signed it. There is nothing in the record to suggest such to be true. If such were true, we think the agreement would be binding on their title thus obtained. Such persons would be estopped from asserting their lot was not subject to the restrictions and they were not bound by the extension agreement. The extension agreement contains not only the express representation that each signer is the owner of property in Blocks 1–11, inclusive, but an express covenant and warranty that the person signing is the owner of the lot or lots shown opposite their respective signatures. The parties mutually covenanted and agreed to the extension of the restrictions on the property. The agreement would be enforceable against them when they acquired the property. Certainly the evidence shows that the signers of the extension agreement had title prior to the recording of the agreement. The recording was in May, 1952, about two and one-half years before the original restrictions expired.

■ Appellant next contends there is no evidence to show that plaintiffs Krakower, Martin and Greenfield owned property in the addition. The evidence shows that appellee Martin had resided in the home with his wife and children since 1952. The property on which he resided was conveyed to him by general warranty deed. There is no testimony in any way challenging his ownership.

Appellee Greenfield testified he owned the lot where he had lived for 22 years. Too, there was in evidence a deed of trust executed by Greenfield and his wife conveying his lot as security for the purchase price. There is no testimony attacking his ownership.

Appellee Krakower had occupied his home since 1952. There is no testimony attacking his ownership.

■ It must be kept in mind that this is not a trespass to try title suit in which the purpose of the suit is the recovery of title. Here title is only incidentally involved. A deed into a person is prima facie evidence of ownership. East Side Realty Co. v. Fowler, Tex.Civ.App., 202 S.W. 999; Clayton v. Ancell, 140 Tex. 441, 168 S.W.2d 230. Too, possession of real estate is prima facie evidence of ownership. 23 Tex.Jur.2d § 89, pp. 130–131. In the case of Greenfield, while no deed was shown into him, there was a deed of trust covering the property executed by him and his wife given to secure the purchase price of the home. It will be presumed, until the contrary is shown, that a person would not execute a deed to land he did not own. Massie v. Hutcheson, Tex.Civ.App., 296 S.W. 939.

■ The next contention of appellant is that the owners of the requisite number of square feet in the addition did not validly execute the extension agreement. There are three groups of alleged owners who are attacked. There were other groups but appellees have conceded attack on them was good.

1. There was a deed into E. F. Reynolds and wife, Harriet. The extension agreement was signed Eugene F. Reynolds and wife, Lillian H. Reynolds. The attack here is on the signature of Lillian H. Reynolds when the deed into Reynolds showed his wife to be "Harriet."

2. This group consists of persons who received a deed in his or her Christian name followed by the surname while the extension agreement was signed merely by initials followed by the surname. There are quite a number of persons in this group and we will not set them all out. A representative example is a deed into Sol. L. Black and wife, Ruth G. Black, and the signature on the extension agreement was S. L. Black and wife, Ruth Gross Black.

3. This group consists of instances where the wife did not give her Christian name but gave her husband's name with the prefix "Mrs.", when the extension agreement was signed. The deed into the woman had given her Christian name. A representative example is where the deed read "Howard S. Stone and wife, Eula Rose Stone", and the extension agreement was signed "H. S. Stone and wife, Mrs. H. S. Stone".

We are of the view that the same principle controls as to each group. Whether the same persons, both husband and wife to whom the deed ran, signed the extension agreement, is purely a question as to whether the evidence is sufficient to support the trial court's conclusion that the persons were the same. It is purely a question of identity.

With regard to group 2, the names in the deed and as signed to the extension agreement are so similar that in the absence of any evidentiary attack suggesting a difference in persons or casting suspicion on the execution of the extension agreement, identity is established. Dittman v. Cornelius et al., Tex.Com.App., 234 S.W. 880, and numerous authorities there cited and discussed.

■■ With regard to the signatures by the married women, it is to be noted there is nothing in the record to suggest that the woman described in the deed as the wife of the man who was grantee was not the same woman who signed the extension agreement as the wife of a given man who signed. Once a marriage is established, it is presumed to continue until dissolution is established by evidence. Here, under the evidence, it is presumed that the same wife who was named in the deed signed the extension agreement because in each the woman is recited to be the wife of a given

signer and no evidence of any man having been married more than once, or that the wife named in the deed had died, is in the record. Curry v. Curry, Tex.Civ.App., 122 S.W.2d 677.

Finally, the appellant contends the Trial Court erred in refusing to allow him to open and close the argument to the jury because the only issues submitted to the jury were ones upon which he bore the burden of proof.

The record shows that after the charge was drawn, but before it was read to the jury, appellant made his motion to be allowed to open and close the argument. The court refused the request.

█ In this the court erred. Rule 269, Texas Rules of Civil Procedure, provides in part that "the party having the burden of proof on the whole case, *or on all matters which are submitted by the charge * * * * shall be entitled to open and conclude the argument * * * *"* Here the appellant did not have the burden of proof on the whole case, but the court had determined as a matter of law that the restrictions were validly extended and that appellant was violating the restrictions, thus leaving only three issues to be determined by the jury and on each issue the burden of proof was on appellant. He was, therefore, entitled to open and close the argument.

█ We are of the view, however, that the error was harmless. We know the right to open and close the argument is, as appellant contends, a valuable right. How- ever, the mere denial of the right does not create reversible error. Under Rule 434, T.R.C.P., the error is not reversible unless from a consideration of the whole record, it was calculated to cause and probably did cause rendition of an improper judgment.

Here the testimony was not complicated. In fact, there were very few conflicts in the facts testified to. Practically all of the oral testimony is supported by clear photographs and an easily understood plat of the addition upon which all violations are marked. The photographs were of representative homes throughout the addition and of homes where alleged violations existed. The jury had no problem of reconciling conflicting complicated evidence. It really only had to express a conclusion on the basis of such evidence as to whether there was waiver by the plaintiffs of the restrictions, or whether the construction of multi-family dwellings had become so prevalent in the addition as to constitute abandonment of the restriction; and, whether the character of the lots had changed from one in which rooms and apartments were not generally occupied by persons other than members of a single family to one in which rooms and apartments were generally occupied by persons other than members of such families. A reading of the whole record convinces us that the evidence heavily preponderates against appellant on all issues. It is difficult to see how the jury could have concluded otherwise than it did.

The judgment of the trial court is affirmed.

COLEMAN, J., not sitting.